## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>La Paloma Generating Company, LLC, *et al.*,[1]<br><br><br>Reorganized Debtors. | Chapter 11<br><br>Case No. 16-12700 (CSS)<br><br>(Jointly Administered) |
| Ad Hoc Group of Second Lien Creditors,<br><br>Appellant,<br><br>vs.<br><br>La Paloma Generating Company, LLC,<br><br>Appellee. | Civil Action 17-1697<br>BAP No. 17-44 |

### MOTION OF LNV CORPORATION FOR LEAVE TO INTERVENE
### AS APPELLEE PURSUANT TO RULE 8013(g)
### OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

LNV Corporation ("**LNV**"), as lender under (i) that certain First-Lien Working Capital Agreement, dated as of February 20, 2014, by and between La Paloma Generating Company, LLC, the lenders and L/C issuers party thereto, and Bank of America, N.A., as administrative agent (as amended, restated, supplemented or otherwise modified from time to time, the "**First-Lien WCF Agreement**") and (ii) that certain First-Lien Term Loan Credit Agreement, dated as of February 20, 2014, by and between La Paloma Generating Company, LLC, the lenders party thereto, and Bank of America, N.A., as administrative agent (as amended, restated, supplemented

or otherwise modified from time to time, the "**First-Lien Term Loan Credit Agreement**"), hereby submits this motion (the "**Motion**") for an order granting leave to intervene as an appellee pursuant to Rule 8013(g) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") in the above-captioned appeal of the *Findings of Fact, Conclusions of Law and Order Confirming Joint Chapter 11 Plan for La Paloma Generating Company, LLC, et al., and Approving Sale of Assets Thereunder* (the "**Confirmation Order**") [Bankr. D.I. 869], which was entered by the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") on November 6, 2017, filed by the Ad Hoc Group of Second Lien Creditors (the "**Appellant**").  In support of this Motion, LNV respectfully states as follows:

## PRELIMINARY STATEMENT

1.      This appeal challenges the Conformation Order.  Despite LNV being the largest creditor in the bankruptcy cases, the purchaser of substantially all of the Debtors' assets and a party to the Confirmation Order, LNV was not expressly named as a party to this appeal.  Therefore, out of an abundance of caution, LNV moves to intervene in this appeal.

2.      LNV is the Debtors' largest creditor and was an active participant throughout the bankruptcy cases.  The *Joint Chapter 11 Plan for La Paloma Generating Company, LLC, et al.* [Bankr. D.I. 862] (the "**Plan**"), which was confirmed by the Bankruptcy Court pursuant to the Confirmation Order, incorporated a settlement between LNV and the Debtors that provided, among other things, for a sale of the Debtors' assets to an affiliate of LNV pursuant to a credit bid right.  The Appellant now seeks to unwind that settlement (and impact the asset sale

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are La Paloma Generating Company, LLC (9359), La Paloma Acquisition Co, LLC (2500), and CEP La Paloma Operating Company, LLC (2503). The address of the Debtors' corporate headquarters is 1700 Pennsylvania Avenue NW, Suite 800, Washington, DC 20006.

2

contained in the Plan) and has not expressly named LNV as a party to the appeal. For this reason, and others set forth below, the Court should grant LNV leave to intervene in this appeal.

## BACKGROUND

3. <u>The Chapter 11 Cases</u>. On December 6, 2016, La Paloma Generating Company, LLC ("**La Paloma**") and certain of its affiliates (collectively, the "**Debtors**") filed voluntary petitions with the Bankruptcy Court for relief under Chapter 11 of the Bankruptcy Code (collectively, the "**Cases**"). The Debtors managed and operated their business as debtors-in-possession under Sections 1107(a) and 1108 of the Bankruptcy Code.

4. <u>The First-Lien Obligations</u>. LNV is the sole lender under the First-Lien WCF Agreement and the First-Lien Term Loan Credit Agreement. The obligations under the First-Lien WCF Agreement and the First-Lien Term Loan Credit Agreement (collectively, the "**First-Lien Obligations**"), to or for the benefit of LNV, as the lender thereunder, are secured by first-priority liens on substantially all of the assets of the Debtors pursuant to, among other things, the (i) Second Amended and Restated Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated as of February 20, 2014 and recorded on February 24, 2014 as Document No. 000214020051 with the Kern County, California Recorder's Office (the "**Deed of Trust**") and (ii) that First-Lien Security Agreement, dated as of August 16, 2005 (as amended, restated, supplemented or otherwise modified from time to time, the "**First-Lien Security Agreement**"). The First-Lien Security Agreement was reaffirmed under the First-Lien WCF Agreement and First-Lien Term Loan Credit Agreement pursuant to that certain Reaffirmation and Agreement, dated as of February 20, 2014 (the "**Reaffirmation Agreement**").

5. <u>The Second-Lien Obligations</u>. On February 20, 2014, La Paloma entered into that certain Second Lien Term Loan Credit Agreement (as amended, restated, supplemented or otherwise modified from time to time, the "**Second-Lien Credit Agreement**"), by and among

3

La Paloma, SunTrust Bank, as administrative agent (the "**Second-Lien Administrative Agent**"), Macquarie Bank Limited, as the letter of credit issuer, and the lenders party thereto (the "**Second-Lien Lenders**").  The Debtors' obligations under the Second-Lien Credit Agreement are secured by substantially the same assets as the First-Lien Obligations on a junior basis.

6. <u>The Intercreditor Agreement</u>.  On August 16, 2005, the Debtors, The Bank of New York, as collateral agent (the "**Collateral Agent**"), the administrative agents under each of the First-Lien WCF Agreement, the First-Lien Term Loan Credit Agreement and the Second-Lien Credit Agreement, and certain other parties entered into that certain Collateral Agency and Intercreditor Agreement (as amended, restated, supplement or otherwise modified from time to time, the "**Intercreditor Agreement**").  The Intercreditor Agreement was reaffirmed under the First-Lien WCF Agreement, First-Lien Term Loan Credit Agreement and the Second-Lien Credit Agreement pursuant to the Reaffirmation Agreement.

7. <u>The Settlement and the Plan</u>.  The Debtors filed an initial version of the Plan on September 21, 2017 [Bankr. D.I. 637], incorporating a settlement reached with LNV following extensive negotiations.  Among other things, the Plan provided that an affiliate of LNV would credit bid for and purchase the Debtors' power facility and related assets, LNV would receive certain cash pledged to it, the liens of the Collateral Agent were left intact, and LNV agreed to forego the benefit of its liens on certain assets for the benefit of unsecured creditors. Distributions that theoretically would go to the Second-Lien Lenders on account of their unsecured claim (which is their entire claim) were to be held in reserve with the Collateral Agent (commensurate with the First-Lien Security Agreement, Deed of Trust and Intercreditor Agreement) pending a determination by the Bankruptcy Court as to whether the Second-Lien Lenders are entitled to such distribution in light of the Intercreditor Agreement.  <u>See</u> Plan, § 4.4.

The Plan also provided that the Intercreditor Agreement "shall remain in full force and effect" and "shall be fully enforceable according to its terms." Id. § 5.7(a). The Bankruptcy Court held a confirmation hearing on October 30, 2017, and the Bankruptcy Court entered the Confirmation Order on November 7, 2017.

8.  Appeal. On November 20, 2017, the Appellant filed a notice of appeal of the Confirmation Order [Bankr. D.I. 896] (the "**Notice of Appeal**").

## ARGUMENT

9.  Bankruptcy Rule 8013(g) provides that an entity seeking to intervene in an appeal pending in the District Court:

> must move for leave to intervene . . . within 30 days after the appeal is docketed. [The Motion] must concisely state the movant's interest, the grounds for intervention, whether intervention was sought in the bankruptcy court, why intervention is being sought at this stage of the proceeding, and why participating as an amicus curiae would not be adequate.

Fed. R. Bankr. P. 8013(g). LNV satisfies each of these criteria.

10.  ***Filing Within 30 Days***. The appeal was docketed in this Court on November 22, 2017. This Motion is being filed within 30 days of the docketing of the appeal and is therefore timely.

11.  ***Movant's Interest***. LNV's interest in this appeal is clear. LNV was a party to the Confirmation Order. See Notice of Appeal at 3. The Confirmation Order approved the Plan which incorporated a comprehensive settlement between LNV and the Debtors and involves a sale of Debtor assets to an affiliate of LNV pursuant to a credit bid. The Appellant now seeks to challenge and unwind the settlement reached by LNV and the Debtors and impact the sale of assets pursuant to the Plan. Accordingly, LNV seeks to protect its interests, both as a creditor and a purchaser, by intervening in this appeal.

12. ***Grounds for Intervention.***  LNV's participation was crucial in negotiating the settlement which is the foundation of the confirmed Plan.  As the purchaser of substantially all of the Debtors' assets, LNV has a substantial interest in ensuring that the Confirmation Order is upheld.  If LNV is not permitted to participate in the appeal and this Court determines that the Bankruptcy Court erred in confirming the Plan, LNV effectively will have been denied the opportunity to be heard and defend its rights.  Appellant's mistake in not including LNV as a party to the appeal should not deprive LNV of its right to be heard and defend its interests.

13. ***Whether Intervention Was Sought in the Bankruptcy Court.***  LNV actively participated in the Cases, made significant concessions to its secured claim in the Plan, obtained benefits from the Plan, acquired assets, and actively opposed the Appellant's objection to the Plan in the proceedings below.  Accordingly, LNV is a proper party to this appeal, and deserves the ability to defend the Confirmation Order in this proceeding.

14. ***Intervening at the Current Stage.***  This Motion is filed at the current stage because it is within the thirty day time period required under Bankruptcy Rule 8013(g) and Appellant should have included, but failed to include, LNV as a party to the appeal.  As discussed above, LNV was an active and crucial participant in the proceedings below and opposed the Appellant's objection to the Plan.  No substantive activity on the merits has occurred since the docketing of this appeal.  LNV is seeking to intervene proactively and without prejudice to any other party in interest.

15. ***Participating as Amicus Curiae Is Inadequate.***  Having LNV participate as amicus curiae would not be adequate because it would hinder LNV's ability to protect its interests.  Bankruptcy Rule 8017 places extensive limitations on the involvement of amicus curiae.  An amicus curiae is not a party to the litigation, and therefore, its standing to appeal any

decision rendered by this Court, if necessary, may be questioned.  Moreover, the ability of amicus curiae to file any substantive motions in an appeal, such as a motion to dismiss, may be limited.  As a party in interest under section 1109(b) of the Bankruptcy Code with a significant economic interest in the outcome of this appeal, LNV should be permitted to participate in every aspect of this appeal, both substantively and procedurally, without any of the limitations that could be imposed on parties who are participating purely as amicus curiae.

## CONCLUSION

WHEREFORE LNV respectfully requests that the Court enter an order granting LNV leave to intervene and such further relief as the Court deems just and proper.

[*Remainder of page intentionally left blank.*]

Dated: December 18, 2017          FOX ROTHSCHILD LLP

        By: */s/ Jeffrey M. Schlerf*
        Jeffrey M. Schlerf (DE No. 3047)
        919 North Market Street, Suite 300
        Wilmington, DE 19801
        Telephone: (302) 654-7444
        Facsimile: (302) 656-8920
        E-mail: jschlerf@foxrothschild.com

        —and—

        Thomas E Lauria (*pro hac vice* pending)
        WHITE & CASE LLP
        Southeast Financial Center, Suite 4900
        200 South Biscayne Blvd.
        Miami, FL 33131
        Telephone: (305) 371-2700
        Facsimile: (305) 358-5744
        E-mail: tlauria@whitecase.com

        —and—

        Roberto J. Kampfner (*pro hac vice* pending)
        WHITE & CASE LLP
        555 South Flower Street, Suite 2700
        Los Angeles, CA 90071
        Telephone: (213) 620-7700
        Facsimile: (213) 452-2329
        E-mail: rkampfner@whitecase.com

        —and—

        J. Christopher Shore (*pro hac vice* pending)
        Andrew Zatz (*pro hac vice* pending)
        WHITE & CASE LLP
        1221 Avenue of the Americas
        New York, NY 10020
        Telephone: (212) 819-8200
        Facsimile: (212) 354-8113
        E-mail: cshore@whitecase.com
             azatz@whitecase.com

        *Counsel for LNV Corporation*